*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

LAMARR VALDEZ ROBINSON,

      Defendant-Appellant.

UNPUBLISHED
April 14, 2026
1:51 PM

No. 373278
Wayne Circuit Court
LC No. 10-006297-01-FC

Before: CAMERON, P.J., and BORRELLO and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his resentencing as a fourth-offense habitual offender, MCL 769.12, to 35 to 70 years' imprisonment for assault with intent to murder (AWIM), MCL 750.83; 35 to 70 years' imprisonment for felon in possession of a firearm, MCL 750.224f; and two years' imprisonment for possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. For the reasons set forth in this opinion, we remand for further proceedings and resentencing of defendant consistent with this opinion.

## I. BACKGROUND

This matter arises from a shooting incident at a gas station on May 13, 2010. While the victim was pumping gasoline, defendant approached from behind on a bicycle and discharged multiple rounds at the victim before fleeing the scene. The victim's associates contacted law enforcement, and his girlfriend, Jessica Taylor, notified the victim's mother, Veronica Chubb. Responding officers arrived and arranged for the victim's transport to the hospital. Although the victim survived, he remained comatose. Medical personnel informed the victim's mother that, in the event of recovery, the victim would be paralyzed, blind, and unable to speak. The victim survived and has been paralyzed, blind, and unable to speak since the shooting.

Law enforcement subsequently apprehended defendant and recovered two cellular phones from his vehicle. Taylor later identified defendant as the shooter. Defendant was charged accordingly and, following a jury trial, was convicted on all counts.

At his initial sentencing, defendant raised objections to several offense variables (OVs), which the trial court overruled. Members of the victim's family, including his brother, stepfather, sister, and uncle, provided victim impact statements. The trial court imposed sentences of 47½ to 120 years' imprisonment for the assault with intent to murder (AWIM) and felon-in-possession of a firearm convictions, and two years' imprisonment for the felony-firearm conviction.

Defendant appealed his convictions and original sentence, which were affirmed by this Court. See *People v Robinson*, unpublished per curiam opinion of the Court of Appeal, issued October 22, 2015 (Docket No. 321841), p 1. Although this Court affirmed the sentence, it observed that the trial court had engaged in improper judicial fact-finding in its assessment of the offense variables. However, the Court found this error to be harmless, as the minimum sentencing guidelines were not affected by the trial court's findings. *Id*. at 13–14. Defendant's application for leave to appeal was denied. *People v Robinson*, 499 Mich 916 (2016).

Defendant subsequently filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of Michigan, alleging, inter alia, that the trial court violated his Sixth Amendment right to a jury trial by relying on facts not determined by the jury at sentencing. See *Robinson v Horton*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued July 27, 2018 (Case No. 2:16-CV-12721), pp 11–12, rev'd 950 F.3d 337 (6th Cir. 2020). The district court denied the petition. *Id*. at 12, 14. On appeal, the United States Court of Appeals for the Sixth Circuit vacated the district court's order and remanded the matter. *Robinson v Horton*, 950 F.3d 337, 342, 348 (6th Cir. 2020). On remand, the district court directed defendant to file a motion for relief from judgment and held the petition in abeyance. *Robinson v Horton*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued May 18, 2020 (Case No. 2:16-CV-12721), p 2.

Defendant subsequently moved for relief from judgment in the trial court, reiterating the sentencing issue previously raised in his habeas corpus petition. The trial court denied the motion, concluding that the issue had been raised on direct appeal. Defendant's applications for leave to appeal to this Court and to the Michigan Supreme Court were both denied. See *People v Robinson*, unpublished order of the Court of Appeals, entered August 26, 2021 (Docket No. 357765); *People v Robinson*, 509 Mich 866 (2022).

Defendant filed an amended petition for habeas corpus, again asserting a constitutional challenge to his sentences. The prosecution stipulated to the defendant's argument. The federal district court ordered the trial court to conduct a hearing pursuant to *United States v Crosby*, 397 F.3d 103 (2d Cir. 2005), and *People v Howard*, 323 Mich App 239; 916 NW2d 654 (2018), to determine whether the defendant's sentences would remain unchanged absent the improper judicial fact-finding. See *Robinson v Winn*, unpublished order of the United States District Court for the Eastern District of Michigan, entered October 28, 2022 (Case No. 16-cv-12721), pp 1–2. Upon resentencing on April 12, 2024, the parties stipulated to the defendant's minimum sentencing guidelines: (1) 171 to 570 months for the AWIM conviction, and (2) 12 to 48 months for the felon-in-possession conviction. At the hearing, Veronica Chubb provided a statement detailing the hardships she and the victim's stepfather, Brian Cook, endured while caring for the victim. Veronica claimed defendant shot the victim when the victim was on the ground, and that defendant shot her son eight times. Veronica also informed the court that she was one of the victim's

caretaker, which was difficult because she was 70 years old. She hired nurses to help her care for the victim, but those nurses were unreliable.

Cook addressed defendant's criminal history and claimed defendant "had four young ladies prostituting for him," and Taylor was defendant's "top girl." Defendant addressed the court, claiming rehabilitation during his incarceration and expressing remorse, including an apology to the victim's family. The trial court imposed the sentences as delineated, expressly noting the impact of the victim statements on its decision, stating:

> Well, initially, I thought I had an idea of what I was going to do in regard to sentencing, but after hearing from [the victim's] mother and stepfather, the Court is going to resentence [defendant] within the guidelines to serve a minimum of 35 years in the Michigan Department of Corrections, a maximum of 70 years.

This appeal ensued.

## II. INACCURATE INFORMATION

On appeal, defendant asserts that Veronica told the sentencing court that he discharged his firearm at the victim while the victim was prone. No trial evidence corroborated this claim. The prosecution could not specify the total number of gunshots, though Veronica stated the victim sustained eight gunshot wounds. Defendant further argues the record did not conclusively establish this fact. Although eight shell casings were recovered at the scene, there was no evidentiary support for the precise number of times the victim was shot. Additionally, Cook alleged that defendant engaged in prostitution and exercised control over four women, including Taylor; however, the record is devoid of evidence substantiating Cook's assertion.

Furthermore, defendant contends that the trial court initially indicated a preliminary sentencing inclination, but following allocution by the victim's family, imposed a sentence of 35 to 70 years' imprisonment for both the assault with intent to murder (AWIM) and felon-in-possession convictions. The sentence for the felon-in-possession conviction, defendant argues, grossly exceeded the recommended minimum sentencing guidelines of 12 to 48 months' imprisonment.

When preserved, constitutional issues are reviewed de novo. See *People v Jones*, 260 Mich App 424, 427; 678 NW2d 627 (2004) ("Constitutional issues are also reviewed de novo on appeal."). Defendant never raised his due-process claim in the trial court, making this issue unpreserved. *People v Hogan*, 225 Mich App 431, 438; 571 NW2d 737 (1997). Defendant also never raised any sentencing issues in the trial court, making them unpreserved. See *People v Clark*, 315 Mich App 219, 223-224; 888 NW2d 309 (2016) (quotation marks and citation omitted) ("To preserve a sentencing issue for appeal, a defendant must raise the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals.").

"This Court reviews unpreserved issues, constitutional and nonconstitutional, for plain error." *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007). Unpreserved sentencing issues are also reviewed for plain error affecting substantial rights. *Clark*, 315 Mich App at 224. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have

-3-

occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003).

Defendant avers that the trial court imposed a sentence predicated upon materially inaccurate information, thereby violating his due process rights. Our Supreme Court has unequivocally held that a defendant is constitutionally entitled to be sentenced based on accurate information. *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). A sentence imposed on the basis of inaccurate information is per se invalid. *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997). Where the record demonstrates that the sentence was grounded on scoring errors or other inaccuracies, remand for resentencing is mandatory. *People v Jackson*, 487 Mich 783, 792; 790 NW2d 340 (2010). The evidentiary burden is on the defendant to establish error. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Defendant specifically challenges the trial court's reliance on purportedly inaccurate information contained in the oral victim-impact statements presented at resentencing. Importantly, defendant does not dispute the accuracy of the victim-impact statement included within the Presentence Investigation Report ("PSIR"); rather, his objections are confined to the oral pronouncements of the victim's family members during the resentencing hearing.

Defendant identifies as objectionable several uncorroborated allegations contained within the impact statements of Veronica and Cook: (1) that defendant shot the victim while the victim was on the ground; (2) that defendant shot the victim eight times; and (3) that defendant engaged in the procurement of prostitutes. Defendant contends the trial court improperly relied on these disputed factual assertions at resentencing. Although defendant's challenge is colorable, the trial court failed to articulate the rationale underlying its sentencing determination, while suggesting— by implication—that it was swayed by the oral victim statements. Because the trial court failed to give any indication as to the basis for its sentence, other than to state that it was swayed by the victim's family, remand for further findings is required.

The record belies the veracity of certain factual representations advanced in the impact statements by Veronica and Cook. Specifically, there is no evidentiary support for the claim that defendant shot the victim while the victim was on the ground. Officer Khari Mason of the Detroit Police Department ("DPD"), after reviewing the surveillance video, observed no such conduct and testified that defendant immediately fled the scene post-discharge. Taylor's testimony corroborates the brevity of the incident, indicating that defendant shot the victim and promptly departed. Accordingly, the assertion that defendant shot the victim while the latter was on the ground is unsupported by the evidentiary record.

Officer Eugene Fitzhugh (DPD) testified to the recovery of eight shell casings from the scene, and Sergeant Jeff Amley (MSP) opined that all casings were discharged from a single firearm. While Veronica testified to the victim sustaining two gunshot wounds to the back and one to the neck, Officer Tonya Good (DPD) observed a wound to the back of the victim's head. Critically, although the record demonstrates that defendant discharged eight rounds, it does not

establish with precision the number of wounds sustained by the victim; the evidence supports either three or four gunshot injuries. Thus, the assertion that the victim was shot eight times lacks evidentiary foundation.

The record is further devoid of any evidence substantiating allegations of defendant's involvement in prostitution-related conduct. Taylor identified herself as defendant's girlfriend; Johnson testified to defendant's numerous romantic relationships; and Nicole Waller was described as the mother of defendant's children. While the record demonstrates defendant's engagement in multiple consensual romantic or sexual relationships, there is no competent evidence that he exploited any individual for purposes of prostitution. The claim is therefore unsubstantiated.

Notwithstanding the factual inaccuracies embedded within certain portions of Veronica and Cook's statements, their narratives also detailed the ongoing impact of defendant's conduct. Veronica attested to the victim's resulting paraplegia, blindness, and muteness, necessitating continuous care—a responsibility exacerbated by the advanced age of his caregivers. She further noted systemic deficiencies in the provision of nursing assistance, describing persistent unreliability among hired staff, and voiced concern regarding the absence of an adequate social safety net for individuals in the victim's condition.

Cook evinced skepticism regarding defendant's rehabilitation, referencing defendant's status as a fourth-offense habitual offender. The characterization of defendant as a "coward" for shooting the victim in the back finds some support in the record: Mason's testimony regarding the surveillance video depicts defendant rapidly approaching and shooting the victim, while Good observed a wound to the back of the victim's head. Nonetheless, such pejorative characterizations are, by their nature, subjective and must be scrutinized accordingly.

While select portions of the victim-impact statements—such as those concerning the victim's prognosis and defendant's criminal record—are corroborated by the evidence, defendant's objections pertain exclusively to the oral statements at resentencing. In *People v Maben*, 313 Mich App 545, 554; 884 NW2d 314 (2015), this Court addressed the prejudicial effect of factually inaccurate statements in a PSIR, particularly where such statements extend beyond the impact of the underlying conduct to unrelated or uncharged offenses. *Id*. at 555. This Court held that a defendant is entitled to contest the accuracy of such extraneous factual allegations, given their potential ramifications for prison classification and parole consideration.

Although the instant oral victim-impact statements mirror some of the concerns addressed in *Maben*, they were delivered at the sentencing hearing and are governed by MCR 6.425(D)(1)(c)(iv), which expressly authorizes such allocution. The trial court retains broad discretion to consider these statements, provided that its findings are anchored in the evidentiary record. *People v Montague*, 338 Mich App 29, 55; 979 NW2d 406 (2021). This Court has further recognized that the sentencing standards and the judiciary's awareness of the inherently subjective nature of victim-impact statements constitute adequate procedural safeguards against impermissible reliance on emotional appeals. *Maben*, 313 Mich App at 555.

Unlike allocution at sentencing, the PSIR is an enduring document with collateral consequences, as it accompanies the defendant into the carceral system and may bear upon security classification and parole eligibility. *Id*. at 553. In the present case, defendant does not challenge the contents of the PSIR; nevertheless, the right to be sentenced on accurate information remains paramount. *Francisco*, 474 Mich at 88. The trial court's brief statement at sentencing reflects that it was influenced by the victim-impact statements but fails to articulate the specific bases for its sentencing determination or delineate the particular statements upon which it relied. In the absence of such findings, remand is warranted for the trial court to articulate its sentencing rationale and specify the impact, if any, of the victim-impact statements. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015) (requiring sentencing courts to justify the sentence imposed to facilitate appellate review).

Defendant's oblique reference to proportionality appears to be premised on the assertion that his sentence was improperly inflated by the influence of oral victim-impact statements at resentencing. However, defendant did not preserve a proportionality argument in his statement of the questions presented; such claims are deemed abandoned and unreviewable on appeal. *People v Miller*, 238 Mich App 168, 172; 604 NW2d 781 (1999). Defendant's assault with intent to murder ("AWIM") sentence is presumptively proportionate, falling within the applicable guidelines range. *People v Posey*, 512 Mich 317, 360; 1 NW3d 101 (2023) (Bolden, J.). [1] Notwithstanding, the trial court's acknowledgment that victim-impact statements influenced its decision necessitates, on remand, the trial court must make clear whether those statements were the basis for imposing a sentence at the guidelines' upper limit. Moreover, with respect to the felon-in-possession conviction—a substantial upward departure from the guidelines minimum—the trial court's failure to articulate *any* departure rationale compels resentencing. *People v Smith*, 482 Mich 292, 304; 754 NW2d 284 (2008).

## III. INEFFECTIVE ASSISTANCE

In his appeal, defendant additionally argues that he was sentenced to 35 to 70 years for his felon-in-possession conviction, which constituted a 900% increase from the minimum-sentence guidelines and his counsel's failure to object amounted to ineffective assistance. [2]

When preserved, "[t]he question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Defendant never moved for a new trial or a hearing under *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), making this issue unpreserved. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012); *People v Abcumby-Blair*, 335 Mich App 210, 227; 966

---

[1] While *Posey* was a plurality opinion that is not technically binding, this Court held "it [is] prudent to follow the holding in the interest of judicial economy." *People v Purdle (On Remand)*, ___ Mich App ___, ___; ___ NW3d ___ (2024), lv den ___ Mich ___ (2024) (Docket No. 353821); slip op at 4.

[2] The prosecution failed to address this issue in its briefing.

NW2d 437 (2020). "We review unpreserved claims of ineffective assistance of counsel for errors apparent on the record." *People v Armisted*, 295 Mich App 32, 46; 811 NW2d 47 (2011).

The Michigan and United States Constitutions' guarantee criminal defendants the right to be represented by an attorney. Const 1963, art 1, § 20; US Const, Am VI. "The constitutional right to counsel is not merely the right to have a lawyer stand or sit nearby; rather, a criminal defendant has the right to the effective assistance of counsel." *People v Otto*, 348 Mich App 221, 231; 18 NW3d 336 (2023). "To establish a claim of ineffective assistance of counsel a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense." *People v Fyda*, 288 Mich App 446, 450; 793 NW2d 712 (2010).

"Trial counsel's performance is deficient when it falls below an objective standard of professional reasonableness." *People v Hughes*, 339 Mich App 99, 105; 981 NW2d 182 (2021). To demonstrate deficient performance, "the defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy." *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). "When reviewing defense counsel's performance, the reviewing court must first objectively 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *People v Jackson (On Reconsideration)*, 313 Mich App 409, 431; 884 NW2d 297 (2015), quoting *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984). The defendant then must show that "but for counsel's deficient performance, a different result would have been reasonably probable." *Armstrong*, 490 Mich at 290. "Defendant also 'bears the burden of establishing the factual predicate for his claim.' " *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015), quoting *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Defendant contends that trial counsel rendered constitutionally ineffective assistance by failing to object to the imposition of a 35 to 70-year term of imprisonment for his conviction of felon in possession of a firearm. Appellate review of sentencing determinations requires an evaluation of the reasonableness of the sentence, including whether the punishment imposed is proportionate to the gravity of the underlying offense. *Posey*, 512 Mich at 353. Sentences within the guidelines' recommended range are still subject to proportionality review. *Id*. at 352. Sentences deviating from the applicable guidelines range are scrutinized by the appellate courts for reasonableness. *Lockridge*, 498 Mich at 392. The central question in assessing the reasonableness of a sentence is whether the trial court abused its discretion by infringing on the principle of proportionality. *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017).

The sentencing guidelines codify the principle of proportionality and, as trial courts are obligated to consult these guidelines, they persist as a critical analytical tool—serving as 'guideposts' to mitigate unwarranted sentencing disparities. *People v Dixon-Bey*, 321 Mich App 490, 524-525; 909 NW2d 458 (2017). Accordingly, the determination of whether a departure sentence is more proportionate than one within the guideline range requires consideration of: (1) whether the guidelines adequately capture the severity of the offense; (2) factors not encompassed by the guidelines; and (3) factors addressed by the guidelines but insufficiently weighted. *Id*. at 525 (citations omitted).

When imposing a departure sentence, the trial court must articulate its rationale, specifically addressing why the sentence imposed is more proportionate than that recommended

by the guidelines. *Smith*, 482 Mich at 304. As a threshold matter, defendant bears the burden of demonstrating that defense counsel's performance fell below an objective standard of reasonableness. *Fyda*, 288 Mich App at 450. Here, the parties stipulated that the minimum sentence guidelines for assault with intent to murder (AWIM) were 171 to 570 months, and for felon in possession of a firearm, 12 to 48 months. Nevertheless, the trial court imposed sentences of 35 to 70 years' imprisonment for both offenses.

The sentence for AWIM comported with the minimum sentence guidelines. In contrast, the minimum sentence guidelines for felon in possession were one to four years, yet the trial court imposed a minimum sentence of 35 years—a substantial upward departure. Defense counsel, despite being cognizant of both the guidelines and the magnitude of the departure, failed to interpose an objection. Nor did counsel object to the trial court's omission of an on-the-record explanation for the upward departure. *Smith*, 482 Mich at 304. Under these circumstances, counsel's performance was constitutionally deficient. See *Hughes*, 339 Mich App at 105 ("Trial counsel's performance is deficient when it falls below an objective standard of professional reasonableness.").

To satisfy the second prong of the Strickland test, defendant must establish that he was prejudiced by counsel's deficient performance. *Fyda*, 288 Mich App at 450. Although defendant does not substantively address the prejudice requirement, he asserts that his sentence for felon in possession "grossly exceed[ed]" the applicable minimum sentence guidelines. This assertion is supported by the record, as the trial court's upward departure was significant and unaccompanied by any on-the-record explanation. Because the issue was not preserved below, appellate review is limited to errors apparent on the face of the record. *Armisted*, 295 Mich App at 46.

Although defense counsel should have objected to the upward departure, it remains indeterminate whether such an objection would have influenced the trial court's sentencing decision, given that departures remain within the court's discretion. *Dixon-Bey*, 321 Mich App at 524-525 (recognizing the guidelines as "useful tool[s]" or "guideposts"); see also *Lockridge*, 498 Mich at 392 (sentencing courts may depart from the guidelines without articulating substantial and compelling reasons). Nevertheless, the trial court's failure to provide a contemporaneous explanation for its substantial upward departure is dispositive. The trial court's pronounced upward departure, unaccompanied by an articulation of any rationale, resulted in actual prejudice to defendant. *Smith*, 482 Mich at 304 ("When departing, the trial court must explain why the sentence imposed is more proportionate than a sentence within the guidelines recommendation would have been."). Accordingly, defense counsel's performance was constitutionally ineffective, and defendant is entitled to resentencing on the felon-in-possession conviction. *Fyda*, 288 Mich App at 450.

This matter is remanded to the trial court with instructions to articulate the rationale underlying the imposed sentences and to specify the manner and extent to which the victim-impact statements submitted by the victim's family influenced its sentencing determination. Additionally, we remand for resentencing on defendant's conviction for being a felon in possession of a firearm.

We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Stephen L. Borrello
/s/ Brock A. Swartzle